```
               UNITED STATES DISTRICT COURT
                        FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA

LEE E. GALLIGHER,                :
                                 :
         Plaintiff               :   No. 4:10-CV-2504
                                 :
    vs.                          :   (Complaint Filed 12/8/10)
                                 :
MICHAEL ASTRUE,                  :
COMMISSIONER OF SOCIAL           :   (Judge Munley)
SOCIAL SECURITY,                 :
                                 :
         Defendant               :
```

## MEMORANDUM AND ORDER

### Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lee E. Galligher's claim for social security disability insurance benefits.

Galligher protectively filed his application for disability insurance benefits on June 2, 2008. Tr. 11, 109-112, 119, 126 and 131.[1]  The application was initially denied by the Bureau of Disability Determination on August 13, 2008,[2] Tr. 51-55.  On October 10, 2008, Galligher requested an administrative hearing. Tr. 58-59.  After about 13 months had passed, a hearing

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on April 11, 2011.

2. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.  Tr. 52.

was held before an administrative law judge on November 20, 2009. Tr. 20-48.  On November 24, 2009, the administrative law judge issued a decision denying Galligher's application. Tr. 11-19.  On January 26, 2010, Galligher filed a request for review with the Appeals Council. Tr. 6.  On October 8, 2010, the Appeals Council concluded that there was no basis upon which to grant Galligher's request for review. Tr. 1-5.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Galligher then filed a complaint in this court on December 8, 2010.  Supporting and opposing briefs were submitted and the appeal[3] became ripe for disposition on July 11, 2011, when Galligher elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Galligher meets the insured status requirements of the Social Security Act through December 31, 2012. Tr. 11 and 13.

Galligher was born in the United States on March 3, 1956. Tr. 50, 109 and 126.  Although Galligher attended special

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

education classes, he graduated from high school in 1975 and can read, write, speak and understand the English language. Tr. 42, 134 and 142.

Galligher has a lengthy history of work and earnings. Tr. 121. His past relevant employment[4] was as a school custodian. Tr. 136. The custodian position was described by a vocational expert as semi-skilled, medium work.[5] Tr. 43.

---

4. Past relevant employment in the present case means work performed by Galligher during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

5. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

3

Records of the Social Security Administration reveal that Galligher had earnings in the years 1972 through 2008. Tr. 121. In 2008 his earnings were $6962.23. Id. From 1993 through 2007, Galligher's earning never fell below $24,500.00. Id. Galligher's total earnings from 1972 through 2008 were $706,943.01. Id.

Galligher claims that he became disabled on June 16, 2007,[6]

---

> (c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.
>
> (d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

6. Galligher was 51 years of age on the alleged disability onset date and 53 years of age on the date of the administrative law judge's decision. Galligher was considered a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). The Social Security Administration considers that such age "along with a severe impairment(s) and limited work experience may seriously affect [the person's] ability to adjust to other work." Id.
Contained within the Social Security regulations are grids or tables which lists Rules 201.01 through 203.31 in the left hand column, also known as the Medical-Vocational Rules. These grids or tables are found at 20 C.F.R. pt. 404, subpt. P, app. 2. There are grids or tables for sedentary, light and medium work. The Social Security regulations provide that "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Rule 200.00. In the right hand column of the grid or table is set forth the

because of a cardiac condition, diabetes, obesity and sleep apnea. Doc. 7, Plaintiff's Brief, p. 2. Galligher stopped working as a custodian in June, 2007, and went on sick and annual leave. Tr. 144. He then returned to work as custodian for four full days and four half days in March 2008. Id. This brief return to work was followed by additional sick and annual leave. Id. Galligher has not worked since March, 2008. Id. The record also reveals that Galligher had a work-related injury in March, 2007, for which he received worker's compensation benefits. Tr. 104-108 and 143.

For the reasons set forth below we will affirm the decision of the Commissioner denying Galligher's application for disability insurance benefits.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431

---

"Decision" as to whether a claimant is "disabled" or "not disabled." If all of the criteria of particular Rule are met "[t]he existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules, i.e., in promulgating the rules, administrative notice has been taken of the numbers (sic) of unskilled jobs that exist throughout the national economy at the various functional levels. . . Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." Rule 200.00(b).

Under certain circumstances an individual "closely approaching advanced age" is automatically considered disabled pursuant to the Medical-Vocational Rules. Those rules are not applicable with respect to Galligher's present application.

(3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.");  Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence

6

but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[7] (2) has an impairment that is severe or a combination of impairments that is severe,[8] (3)

---

7. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

8. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform

has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[9] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[10]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as

---

basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

9. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

10. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Galligher had not engaged in substantial gainful work activity since June 16, 2007, the alleged disability onset date. Tr. 13.

At step two of the sequential evaluation process, the administrative law judge found that Galligher had the following severe impairments: "coronary artery disease, status post coronary artery bypass graft, hypertension, type II diabetes mellitus, morbid obesity, obstructive sleep apnea, repair of rotator cuff tear." Tr. 13.

At step three of the sequential evaluation process the administrative law judge found that Galligher's impairments did not individually or in combination meet or equal a listed impairment. Tr. 13.

At step four of the sequential evaluation process the administrative law judge found that Galligher could not perform his

prior relevant medium work as a school custodain but that he had the

> residual functional capacity to perform light work as
> defined in [the regulations]. The individual may need to
> break from any prolonged standing or walking, either by
> change of task or the opportunity to sit in the course of
> that job. The lifting and carrying capacity would be
> within the ranges defined by the dictionary of occupational
> titles for light exertional work. The other
> thing that would be a primary restriction would be bending
> below the waist; it should be occasional bending at best.
> With the dominant upper extremity any kind of repetitive
> reaching overhead would be prohibited although some
> frequent capacity may be there. Otherwise, the general
> handling, grasping, capacity remains intact for at least
> frequent on a bilateral basis with the upper extremities.
> There may be some visual issues with respect to reading or
> distance reading and so the general, primary mode of
> communication should be oral and not reading or writing.
> Likewise, the job itself should not involve . . .
> frequent, detailed, fine visual discrimination, such as
> looking into a microscope . . . or looking at stiching
> for . . . quality control . . . Generally speaking,
> because of the special education history, we ought to be
> looking at more in the very low level, semi-skilled at
> best, and perhaps toward the unskilled range of work
> activity.

Tr. 14. In setting this residual functional capacity, the administrative law judge relied on the opinion of Anne C. Zaydon, M.D., who reviewed Galligher's medical records on behalf of the Bureau of Disability Determination. Tr. 568-573. Dr. Zaydon concluded that Galligher had the physical exertional abilities to engage in a limited range of light work consistent with the administrative law judge's determination.[11] Id.

---

11. The administrative law judge actually imposed additional limitations/requirements which Dr. Zaydon did not find necessary, such as a sit/stand option and limitations relating to the use of the upper extremities.

Based on the above residual functional capacity and the testimony of a vocational expert, the administrative law judge found that Galligher could perform unskilled, light work as a bench type inspector, packager and assembler, and that there were a significant number of such jobs in the regional, state and national economies. Tr. 18.

The administrative record in this case is 739 pages in length, primarily consisting of medical and vocational records. Galligher argues that because there is "no evidence of record" that Galligher retains the residual functional capacity for light work the administrative law judge erred by so finding. Galligher also argues that the administrative law judge inappropriately considered Galligher's credibility.

We have thoroughly reviewed the record in this case and find no merit in Galigher's arguments. The administrative law judge did an adequate job of reviewing Galligher's vocational history and medical records in his decision. Tr. 13-19.  Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 8, Brief of Defendant. Because the administrative law judge adequately reviewed the medical evidence in his decision we will only comment on a few items.

Initially we will note that no treating or examining physician has indicated that Galligher suffers from physical or mental functional limitations that would preclude him from engaging

in the limited range of light work set by the administrative law judge in his decision for the requisite statutory 12 month period.

The alleged disability onset date in this case as noted is June 16, 2007. After that date there are several items of note in the medical records. On August 1, 2007, Galligher was seen by Charles Benoit, M.D., regarding his coronary artery bypass surgery. Dr. Benoit indicated that Galligher was one month status post surgery and doing well. Tr. 310. Dr. Benoit indicated that Galligher stated he was feeling well and had no cardiac symptoms, that he was walking ½ mile with relative ease, taking stairs satisfactorily and in cardiac rehabilitation. Id. Dr. Benoit stated that the incision had healed well and that Galligher needed to increase his activity. Id.

A physical examination performed on October 23, 2007, by Delia Melton, M.D., Galligher's primary care physician, was unremarkable. Tr. 317-319. In fact a neurological motor examination of the upper and lower extremities on that date was normal (5/5). Tr. 318.

Galligher did have a right rotator cuff tear surgically repaired on October 26, 2007, by John H. Bailey, M.D., at the Williamsport Hospital. Tr. 336-338. After that surgery Galligher was examined by James W. Redka, M.D. Tr. 334-335. Dr. Redka found that Galligher was alert and oriented. Id. Dr. Redka reported that Galligher "had known coronary disease . . . since 2001 . . . He had

an open three-vessel bypass this summer at Geisinger Medical Center. He has healed from that and is said to be asymptomatic." Tr. 334. Dr. Redka performed a physical examination during which he observed the following:

> [Galligher] has unusual speech but seems to understand well. . . Head, eyes, ears, nose and throat normal. His body habitus is extremely obese. He is in no distress. He has a bandage from his right shoulder surgery clearly in place. There is not any excess of bleeding. . . . Extremities show trace edema consistent with his obesity only. . . .

Tr. 335.

On November 6, 2007, Galligher had a follow-up appointment with Dr. Bailey regarding his rotator cuff surgery. Tr. 332. Dr. Bailey noted that Galligher was doing well, the wound was "nicely healed," and he was neurovascularly intact distally. Id. By January 11, 2008, Galligher was doing reasonably well. Id. Over the next several months Galligher continued to improve. Id.

At the administrative hearing held in this case Galligher did not mention any serious difficulty with or pain related in his right shoulder and in the brief submitted to this court, Galligher did not state that he had a shoulder condition which limited his ability to work. Also, physical therapy records reveal that by January 2008, Galligher had significant improvement in his range of motion (forward flexion, abduction, external rotation and internal rotation) of his shoulder. Tr. 359.

On May 14, 2008, Donald T. Nardone, M.D., a treating

cardiologist, reported that Galligher's "cardiac symptoms are well controlled at time of last visit other than his edema and shortness of breath which are probably related more to his obesity." Tr. 385. Dr. Nardone encouraged Galligher to engage in aerobic activity for thirty to sixty minutes daily. Tr. 536.

On March 17, 2009, Galligher had an echocardiogram study performed at Susquehanna Cardiology Associates, located in Williamsport. Tr. 584-585. The study was interpreted to be normal, including a normal left ventricle ejection fraction of 60 to 65%.[12] Id.

The medical records do reveal that Galligher's blood sugar levels frequently are not well-controlled. Tr. 534-536. Galligher testified that he is not very compliant with his diabetes regimen, but that if he would be more careful, his blood sugars would be better. Tr. 32. However, Galligher's primary care physician noted that Galligher condition has been improving and that he is exercising three times per week. Tr. 517.

Galligher testified at the administrative hearing that he drives, and that he drove to the hearing, which took a little over

---

12. "Ejection Fraction is a measurement of the percentage of blood leaving your heart each time it contracts. . . Because the left ventricle is the heart's main pumping chamber, ejection fraction is usually measured only in the left ventricle (LV). A normal LV ejection fraction is 55 to 70 percent." Martha Grogan, M.D., Ejection fraction: What does it measure?, MayoClinic.com, http://www.mayoclinic.com/health/ejection-fraction/AN00360 (Last visited February 28, 2012).

one hour. Tr. 27. Galligher lives with three sisters, but is relatively independent, including fixing his own meals, loading and unloading the dishwasher, doing his own laundry, taking out the garbage and mowing the lawn. Tr. 27-29.

The administrative law judge relied on the opinion of Dr. Zaydon, the state agency physician. The administrative law judge's reliance on the opinion of Dr. Zaydon was appropriate. See Chandler v. Commissioner of Soc. Sec., __F.3d.__, 2011 WL 6062067 at *4 (3d Cir. Dec. 7. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

We are satisfied that the administrative law judge appropriately took into account all of Galligher mental and physical limitations in the residual functional capacity assessment. The administrative law judge concluded that Galligher could engage in a limited range of light work. That conclusion is supported by the opinion of the state agency physician.

The administrative law judge stated that Galligher's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of unskilled, light work. Tr. 19. The administrative law judge was not required to accept Galligher's claims regarding his physical limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.

16

1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ."  <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997); <u>see</u> <u>also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Galligher when he testified at the hearing on September 10, 2009, the administrative law judge is the one best suited to assess the credibility of Galligher.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.


                                      <u>s/ James M. Munley</u>
                                      JAMES M. MUNLEY
                                      United States District Judge


Dated: February 28, 2012